**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

TONIE M. GREVE,
            Appellant,

            v.

DEPARTMENT OF HEALTH AND
    HUMAN SERVICES,
            Agency.

DOCKET NUMBER
DE-1221-15-0329-W-1

DATE: February 10, 2016

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Joy Miller, Esquire, Lincoln, Nebraska, for the appellant.

Dawn M. Wilkie, Minot, North Dakota, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**FINAL ORDER**

¶1      The appellant has filed a petition for review of the initial decision, which denied her individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only when:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute

---

[1]  A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or regulation or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review. Except as expressly MODIFIED by this final order, to find that disclosure (4) was protected, and to reassess the evidence in support of the March 4, 2014 letter of reprimand, we AFFIRM the initial decision.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶2    In reviewing the merits of an IRA appeal in which the appellant alleges retaliation for protected disclosures, the Board first considers whether the appellant has established by a preponderance of the evidence that she made protected disclosures under 5 U.S.C. § 2302(b)(8) that were a contributing factor in an agency's personnel action. *Aquino v. Department of Homeland Security*, 121 M.S.P.R. 35, ¶ 10 (2014). If the appellant meets that burden of proof, the Board must order corrective action unless the agency can establish by clear and convincing evidence that it would have taken the same personnel action in the absence of the disclosures. *Id*.; *see* 5 U.S.C. § 1221(e). The appellant argues that the administrative judge made errors at both stages of the analysis.[2]

---

[2] Neither party disputed the administrative judge's finding that the appellant exhausted her administrative remedies with the Office of Special Counsel before appealing to the Board. Initial Appeal File (IAF), Tab 39, Initial Decision (ID) at 2.

¶3      As to disclosure (1), i.e., the one made at the January 8, 2014 staff meeting, the appellant contends that the administrative judge underestimated the seriousness of her allegation that her supervisor was entering admissions orders outside the scope of her nursing license. Petition for Review (PFR) File, Tab 4 at 2-3. We disagree with the appellant's reading of the initial decision. The administrative judge did not minimize the alleged misconduct by the supervisor, but rather stated that, "to the extent the appellant is arguing she reasonably believed that [the supervisor] wrote admission orders and that this evidenced wrongdoing," he would have found that the alleged disclosure was protected. Initial Appeal File (IAF), Tab 39, Initial Decision (ID) at 7. However, he went on to find that the evidence did not show that the appellant made such a disclosure at the January 8, 2014 meeting. ID at 8; *see* Hearing Transcript (HT) (testimony of the supervisor and S.R.). He instead concluded that, as a result of the appellant's statements at the meeting—which the supervisor recalled as including a threat to report her to the state board of nursing "again"—the supervisor believed the appellant had previously reported her to the nursing board on a different matter, specifically, forgetting to chart an immunization. ID at 8-9; *see* IAF, Tab 11 at 28, Tab 19 at 7, Tab 32 at 25; HT (testimony of the supervisor). We discern no error in that finding. The administrative judge further found, in the appellant's favor, that the perceived disclosure was protected and a contributing factor in both personnel actions at issue. ID at 9.

¶4      The appellant also contests the administrative judge's finding that disclosure (2), concerning an alleged abuse of authority by the supervisor, was not protected. PFR File, Tab 4 at 4-5. In her pleadings below, the appellant alleged that in a January 16, 2014 email to Acting Director of Nursing B.P., she stated that the supervisor was "placing her hands next [to her] head and snapping fingers stating 'get busy[.]'" IAF, Tab 10 at 2, Tab 17 at 2. As the appellant notes on petition for review, and as the administrative judge acknowledged below, the record contains testimony and written statements from other

employees confirming that the supervisor had aggressively snapped her fingers at the appellant and other staff nurses and that she did so next to the appellant's head on at least one occasion. IAF, Tab 31 at 33 (statement by V.S.); HT (testimony of V.S. and R.S.); *see* ID at 9-10. However, the administrative judge found no evidence that the appellant reported the finger-snapping incident in her January 16, 2014 email to B.P., or to anyone else. ID at 10; *see* IAF, Tab 31 at 18. On review, the appellant argues that it was "wholly reasonable" that the finger-snapping incident was not included in the January 16, 2014 email. PFR File, Tab 4 at 5. Be that as it may, the record contains no evidence that the appellant made the alleged disclosure elsewhere.

¶5 Disclosure (3) concerns the appellant's February 10, 2014 report to B.P. that a Health Information Management Specialist (Information Specialist) asked the appellant to "alter/tamper" or "make a change to a Federal Medical Record." IAF, Tab 21. On review, the appellant appears to argue that the administrative judge erroneously relied on the Information Specialist's testimony that "some alterations to records are appropriate if done properly." PFR File, Tab 4 at 6; HT (testimony of Information Specialist). However, while the administrative judge noted such testimony, he did not make a finding as to whether the Information Specialist in fact asked the appellant to do anything inappropriate to the record. ID at 11. It was unnecessary to decide the question because the issue to be decided was whether the appellant reasonably believed that she was reporting wrongdoing as described under 5 U.S.C. § 2302(b)(8), not whether she was correct in that belief. *See Chavez v. Department of Veterans Affairs*, 120 M.S.P.R. 285, ¶ 18 (2013). The appellant prevailed on that issue, and the administrative judge further found that disclosure (3) was a contributing factor in both personnel actions. ID at 10-11.

¶6 The appellant also contends that the administrative judge erred in his analysis of disclosure (4), i.e., the appellant's March 12, 2014 disclosure to the Inspector General (IG) that the supervisor gave a gift card for two movie tickets

to another employee for performing her normal duties.  PFR File, Tab 4 at 6-7. To the extent the administrative judge relied on evidence that the gift card could have been purchased at a discount for as little as $10, *see* ID at 12, we agree with the appellant that the actual purchase price was not relevant to the question of whether the disclosure was protected.  It is true that noncash gifts with an "aggregate market value" of $10 or less are exempt from the ethics regulations restricting gifts between employees.  *See* 5 C.F.R. § 2635.304(a)(1).  However, for purposes of those same regulations, the "market value of a gift of a ticket entitling the holder to food, refreshments, entertainment, or any other benefit shall be the face value of the ticket."   5 C.F.R. §§ 2635.203(c), 2635.303(c). Regardless of its purchase price, it is likely that the face value of a gift card for two movie tickets would exceed the $10 threshold, and thus would be covered by the pertinent ethics regulations, which the appellant cited in her IG complaint. IAF, Tab 31, Exhibit C.  While we do not make a finding concerning the permissibility of the gifts, we find that the appellant had at least a reasonable belief that she disclosed information evidencing a violation of law, rule, or regulation.  We therefore conclude that disclosure (4) is protected.

¶7          Nonetheless, we agree with the administrative judge that the appellant failed to show that disclosure (4) was a contributing factor in either personnel action at issue (a March 4, 2014 letter of reprimand and a 5-day suspension beginning on May 2, 2014).  ID at 5-9, 10-14; IAF, Tab 11 at 19-20, 28-29.[3]  As the administrative judge noted, the record contains no evidence that either the supervisor, who issued the letter of reprimand and proposed the suspension, or the deciding official, ever learned about the appellant's disclosure concerning the gift card.  ID at 12.  On review, the appellant argues that "[i]t is not reasonable to

---

[3] At a status conference, the administrative judge identified these two matters as the personnel actions at issue.  IAF, Tab 10.  We find that both a letter of reprimand and a suspension are properly considered "personnel actions" under whistleblower statutes. *See* 5 U.S.C. § 2302(a)(2); *Paul v. Department of Agriculture*, 66 M.S.P.R. 643, 648-50 (1995).

conclude that [the supervisor was not] made aware of [my] report to the IG." PFR File, Tab 4 at 7. We do not find it inherently unlikely that the supervisor was unaware of the appellant's disclosure to the IG, however, and the appellant's mere speculation to the contrary is insufficient to satisfy the knowledge/timing test.[4] We also agree with the administrative judge that the record provides no other basis for concluding that disclosure (4) was a contributing factor in either personnel action.[5]

¶8      The appellant also objects that the administrative judge failed to consider disclosures other than disclosures (1) through (5). PFR File, Tab 4 at 8.[6] In particular, she refers to "the March 14, 2014 reportings which [the supervisor] was explicitly made aware of." *Id*. While the appellant does not describe that disclosure on review, she stated below that on March 14, 2014, the following took place: "I sent an e-mail in regards to patient safety and EMTAL[7] violations and filed a webincident (internal program). I sent the e-mail up the chain of command to" the Chief Executive Officer. IAF, Tab 17. However, the appellant

---

[4] One way for an appellant to establish the contributing factor criterion is the knowledge/timing test, under which she may demonstrate that a disclosure was a contributing factor in a personnel action through direct or circumstantial evidence, such as evidence that the official who took the personnel action knew of the disclosure and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *see Linder v. Department of Justice*, 122 M.S.P.R. 14, ¶ 17 (2014) (finding that an interval of approximately 4 months was sufficient to satisfy the timing prong of the knowledge/timing test). A disclosure that occurs after the personnel action at issue was taken cannot be considered a contributing factor in that personnel action.

[5] To the extent the appellant's IG complaint may be protected under 5 U.S.C. § 2302(b)(9)(C), we find for the same reasons that her protected activity was not a contributing factor in either personnel action at issue.

[6] The administrative judge found that disclosure (5), i.e., the appellant's report concerning the death of a patient on April 17, 2014, was protected and a contributing factor in both personnel actions. ID at 12-13.

[7] The appellant was likely referring to the Emergency Medical Treatment and Active Labor Act.

did not make a timely objection to the administrative judge's May 26, 2015 order, which listed only disclosures (1) through (5) as bases for the Board's jurisdiction. IAF, Tab 21 at 1 n.2, 2-3. Nor did she address the alleged March 14, 2014 disclosure in her prehearing submission. IAF, Tabs 30-31. Moreover, even if the appellant had not waived any objection to the omission of the alleged March 14, 2014 disclosure, the mere reference to unspecified "patient safety and EMTAL violations" would be insufficient to establish by preponderant evidence that the disclosure was protected.

¶9      Proceeding to the next stage of the analysis, the issue to be decided is whether the agency proved by clear and convincing evidence that it would have taken the contested personnel actions in the absence of the appellant's whistleblowing. Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e). In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors: (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). "Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion." *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012). Because neither party introduced evidence pertaining to any similarly situated individual who did not engage in whistleblowing, factor (3) is neutral, and we may confine our attention to factors (1) and (2).

¶10     The first contested action is the March 4, 2014 letter of reprimand for "Conduct Unbecoming a Federal Employee." In the letter, the supervisor described the appellant's alleged misconduct as follows:

> On January 8, 2014, a meeting was held with the Outpatient Department nurses to discuss the task of floating to other nursing units. You interrupted the meeting by stating, "No, I won't go," over and over in a loud voice. I stated that you would go and offered assistance during your turn to float. You then stated loudly, "You cannot threaten me . . . , I won't go and I'm calling the Nebraska State Board of [N]ursing on you!" You again stated loudly, "I'm calling the state board on you again!" You disrupted the meeting by interrupting the discussion of work assignments with your loud remarks. The behavior exhibited was inappropriate, unprofessional, and detracted from your character. Therefore, you have displayed conduct that is unbecoming of a Federal Employee.

IAF, Tab 11 at 28.

¶11     Regarding factor (1), the strength of the evidence in support of the agency's action, the appellant correctly observes that the supervisor's account of the January 8, 2014 meeting is inconsistent with the testimony of other nurses who were present. PFR File, Tab 4 at 3-4. At the hearing, the supervisor testified that the appellant repeatedly shouted that she would not float to another unit, to the point that nurses felt uncomfortable and started to get out of their chairs. HT (testimony of the supervisor). By contrast, S.R. testified that she: (1) did not think the appellant had shouted, although she often expressed herself loudly; (2) did not recall the appellant "repeatedly" telling the supervisor that she would not float, and (3) did not recall the nurses getting out of their chairs. HT (testimony of S.R.) Another nurse, V.S., also testified that she did not recall the appellant shouting. HT (testimony of V.S.). Likewise, R.S. testified that she would not describe the appellant as yelling, although she did raise her voice. HT (testimony of R.S.). In addition, the appellant provided a written statement by another nurse, J.U., who stated that she did not feel the appellant was "out of line" in expressing her concerns about the floating issue. IAF, Tab 30, Exhibit A.

While it is undisputed that the appellant refused to float to another unit, the record does not show clearly that she did so repeatedly, that she shouted, or that she disrupted the meeting to the point that nurses started to get out of their chairs.[8]

¶12    We further note that, for purposes of assessing the strength of the evidence in support of the agency's action, it is immaterial whether the supervisor's directive was lawful. *Contra* ID at 16, 17. Neither the charge nor the underlying specification indicates that the appellant was disciplined for insubordination or refusal to follow instructions. IAF, Tab 11 at 28. Hence, regardless of whether the order was legal, the appellant's refusal to comply, standing alone, would not lend support to the agency's action. *Cf. Gottlieb v. Veterans Administration*, 39 M.S.P.R. 606, 609 (1989) (finding that the Board is required to review the agency's decision on an adverse action solely on the grounds invoked by the agency, and may not substitute what it considers to be a more adequate or proper basis).

¶13    Nonetheless, it is undisputed that the appellant openly threatened to report the supervisor to the nursing board in the middle of the January 8, 2014 meeting, in front of the other nurses present. The appellant provided statements from two nurses, S.R. and J.U., who stated that they did not believe it was "inappropriate" or "out of line" for the appellant to raise concerns about the floating issue. IAF, Tab 30 at 10-11. However, we can imagine no justification for the appellant to voice her concerns in the form of a threat. As stated in the letter of reprimand, the appellant's behavior was inappropriate, unprofessional, and unbecoming a Federal employee. We note that the agency's table of penalties prescribes a letter of reprimand as the minimum penalty for a first offense involving

---

[8] To the extent the administrative judge found that the supervisor "perceived the events as such," we find that this is not a sufficiently sound reason for overturning his demeanor-based credibility determination. ID at 15-16; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). However, it does not follow from this that the supervisor's perception was accurate.

"unprofessional" or "discourteous" language.  IAF, Tab 32 at 70.  We agree with the administrative judge that, under these circumstances, the letter of reprimand was an "appropriately measured response."  ID at 14.

¶14      Regarding the second *Carr* factor, the record suggests that the supervisor had some motive to retaliate against the appellant based on disclosure (1), i.e., her perception that the appellant had reported her to the state board of nursing the previous year for forgetting to chart an immunization.  However, considering the record as a whole, we are convinced that the supervisor would have issued the reprimand regardless of whether she considered that perceived disclosure.  While the letter of reprimand was evidently motivated to some extent by the appellant's threat to file a report against the supervisor in the future, the threat of a disclosure does not by itself constitute protected whistleblowing activity under 5 U.S.C. § 2302(b)(8) or (b)(9)(A)(i), (B), (C), or (D).  We therefore find that the agency met its burden of proving by clear and convincing evidence that it would have issued the March 4, 2014 letter of reprimand absent the appellant's whistleblowing.

¶15      The final issue to be decided is whether the agency proved by clear and convincing evidence that it would have imposed the 5-day suspension in the absence of the appellant's whistleblowing activity.  In her April 18, 2014 proposal notice, the supervisor indicated that she proposed to suspend the appellant on a charge of "Conduct Unbecoming a Federal Employee," based on the following alleged incidents:

> Specification 1:  On March 3, 2014, it was reported that you were rude to another employee who had asked you a question.  The employee was looking for his wife who was being seen in the clinic.  When he asked you where she was, you responded, "Who sent you back here? . . . Go back to the front to whoever sent you here."  You didn't provide assistance to this employee and were rude when responding to his question.  This behavior exhibited was inappropriate, unprofessional, and detracted from your character.  Therefore, you have displayed conduct that is unbecoming of a Federal employee.

Specification 2: On March 7, 2014, I was speaking with another employee regarding . . . assignment sheets when you interrupted the conversation and loudly stated, "Why can't you make out the assignment sheet . . . . You're the supervisor and that's part of your duties." I explained that the charge nurse duties are in place and that you had signed off on them. You walked closer and loudly stated, "Oh no. I didn't sign anything. Are you saying that as a supervisor you are refusing to make assignments? I'm going to notify the Merit Protection Board [sic] on you." This behavior was inappropriate, unprofessional, and detracted from your character. Therefore, you have displayed conduct that is unbecoming of a Federal employee.

IAF, Tab 11 at 23.

¶16　　The agency's evidence in support of Specification 1 consists largely of the testimony and written statements of the supervisor, who reported being told by an Information Technology (IT) employee that on the date in question he witnessed the appellant responding inappropriately to a man who was looking for his wife in the clinic. HT (testimony of the supervisor); IAF, Tab 19 at 14-15, Tab 30 at 14. The IT employee did not make a written statement, but signed and dated the portion of a March 28, 2014 email in which the supervisor summarized his verbal report. IAF, Tab 19 at 15. On review, the appellant asserts that the administrative judge neglected what she claims to be evidence that the supervisor coerced the IT employee into reporting the incident. PFR File, Tab 4 at 7. We find no such evidence. While the supervisor reported that the IT employee was "afraid" to make a written statement, *see* IAF, Tab 19 at 14, the basis of his fear is unclear from the record, and in any event he did not make a written statement, coerced or otherwise. Furthermore, while the supervisor's written statements were inconsistent as to whether the incident concerned the IT employee's wife versus someone else's wife, this particular detail is not essential to the merits of the charge.

¶17　　As for Specification 2, the agency provided testimonial evidence from the supervisor who was the recipient of the appellant's March 7, 2014 verbal attack. HT (testimony of the supervisor). In her response to the proposed suspension, the

appellant stated that she did "not remember" the encounter, and asserted her "right to ask a question of a direct supervisor at any time without fear or of reprisals, retaliation, and intimidation." IAF, Tab 11 at 21. However, she did not specifically deny, nor has she contested the administrative judge's decision to credit, the supervisor's version of events regarding the March 7, 2014 encounter.

¶18 As to the penalty, we agree with the administrative judge that a 5-day suspension was an "appropriately measured response" under the circumstances of this case. ID at 18; *see O'Neill v. Department of Housing & Urban Development*, 220 F.3d 1354, 1364 (Fed. Cir. 2000) ("Insolent disrespect towards supervisors so seriously undermines the capacity of management to maintain employee efficiency and discipline that no agency should be expected to exercise forbearance for such conduct more than once."); *see also* IAF, Tab 32 at 70 (prescribing a 5-day suspension as the minimum penalty for a second offense involving "unprofessional" or "discourteous" language). In sum, we find that the evidence in support of the agency's action is strong and that the first *Carr* factor therefore weighs in the agency's favor.

¶19 On review, the appellant contends that the agency deprived her of due process rights, as well as her rights under the First and Sixth Amendments, when it imposed the 5-day suspension. PFR File, Tabs 1, 5. To the extent her constitutional claims are intended as affirmative defenses, the Board will not hear such affirmative defenses in the context of an IRA appeal. *See Van Ee v. Environmental Protection Agency*, 64 M.S.P.R. 693, 699 (1994); 5 C.F.R. § 1209.2(c).

¶20 To the extent the appellant's constitutional arguments might be construed as contesting the strength of the evidence in support of the agency's action, we find they are without merit. The appellant reiterates her argument from below that the agency denied her due process by failing to provide her with documentation supporting the action. PFR File, Tab 1 at 4. However, the record reflects that she did not request such documentation during the response period, and did not

complain about a lack of documentation until 7:29 p.m. on May 2, 2014, on the same date as, but after the decision to suspend her had already been issued, given that she clearly references in the request that she received the suspension letter earlier that day. IAF, Tab 31 at 9. The appellant also contends that she was deprived of a meaningful response to the proposed action because the deciding official had served as a concurring official in the investigation that led to the suspension action. PFR File, Tab 1 at 4. Nevertheless, we have held that a deciding official's knowledge of and involvement in an investigation leading to disciplinary action does not by itself constitute a due process violation. *See Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶¶ 9-10 (2013).

¶21    We further find that the agency did not violate the appellant's rights under the First Amendment. The Supreme Court has clarified that Government employees retain their First Amendment right, as citizens, to comment on matters of public interest; the task in a particular case is to arrive at a balance between the interests of the employees in commenting on matters of public concern and the interest of the Government, as employer, in promoting the efficiency of the public services it performs through its employees. *Pickering v. Board of Education of Township High School District*, 391 U.S. 563, 568 (1968). The threshold question in applying this balancing test is whether the affected employee's speech may be "fairly characterized as constituting speech on a matter of public concern," i.e., whether it addresses items of "political, social, or other concern to the community," as opposed to internal agency grievances. *Jackson v. Small Business Administration*, 40 M.S.P.R. 137, 145 (1989). Here, the verbal conduct for which the appellant was suspended did not amount to speech on a matter of public concern, and her First Amendment interest therefore gives way to the Government's legitimate interest in the efficiency of the service. *See Curry v. Department of the Navy*, 13 M.S.P.R. 327, 331 (1982) (observing that employee speech that lacks a public dimension and is seen as subversive to good order, efficiency, or discipline in the workplace, is more likely to be held

unprotected than speech that is more public in character). As for the appellant's claim that the agency violated her Sixth Amendment rights, the Sixth Amendment concerns criminal prosecutions and has no application to an administrative case such as this.

¶22    Finally, as to the third *Carr* factor, we agree with the administrative judge that the evidence of retaliatory motive on the part of the responsible agency officials was not especially strong, at least concerning the 5-day suspension action. Because disclosure (2) was not protected, and disclosure (4) was not a contributing factor in either personnel action, the only disclosures to be addressed are (1), (3), and (5). As to disclosure (3), concerning the appellant's report of being asked to tamper with a medical record, there is no evidence that the proposing and deciding officials were either directly aware of that disclosure or influenced by someone who was. To the extent the proposing or deciding officials may have been motivated to retaliate against the appellant for disclosure (5), the timing of events indicates that it is unlikely that retaliatory motive played a role in the 5-day suspension action. The appellant made disclosure (5) on April 18, 2014, the same date as the proposal notice. In the unlikely event that the proposing official was aware of the disclosure when the proposal notice was issued, she had previously expressed her intention to suspend the appellant in the *Douglas* factors worksheet she prepared 2 days earlier. IAF, Tab 11 at 25-27. Moreover, there is no evidence that the deciding official was directly aware of disclosure (5), and to the extent she may have been influenced by the proposing official (after she learned of the disclosure) or the Information Specialist, the administrative judge found no indication that she would have imposed a lesser penalty otherwise. The administrative judge reached this finding based in part on his observation of the deciding official's testimony, and we do not discern sufficiently sound reasons for overturning his credibility determination. ID at 21; *see Haebe v. Department of Justice*, 288 F.3d 1288, 1301 (Fed. Cir. 2002). Finally, while the supervisor may well have been

motivated to retaliate against the appellant for perceived disclosure (1), we agree with the administrative judge that any retaliatory motive that could be attributed to her or the deciding official is outweighed by the strong evidence in support of the agency's actions.

¶23     In sum, we discern no error in the administrative judge's conclusion that the agency proved by clear and convincing evidence that it would have taken the personnel actions at issue in the absence of the appellant's protected whistleblowing activity.  We therefore affirm the initial decision.

### NOTICE TO THE APPELLANT REGARDING
### YOUR FURTHER REVIEW RIGHTS

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter.  5 C.F.R. § 1201.113.  You have the right to request review of this final decision by the U.S. Court of Appeals for the Federal Circuit.

The court must receive your request for review no later than 60 calendar days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(A) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  The court has held that normally it does not have the authority to waive this statutory deadline and that filings that do not comply with the deadline must be dismissed. *See Pinat v. Office of Personnel Management*, 931 F.2d 1544 (Fed. Cir. 1991).

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices under 5 U.S.C. § 2302(b)(8), (b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.  The court of appeals must receive your petition for review within 60 days after the date of this order.  *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012).  If you choose to file, be very careful to file on time.  You may choose to request review of the

Board's decision in the U.S. Court of Appeals for the Federal Circuit or any other court of appeals of competent jurisdiction, but not both. Once you choose to seek review in one court of appeals, you may be precluded from seeking review in any other court.

If you need further information about your right to appeal this decision to court, you should refer to the Federal law that gives you this right. It is found in title 5 of the U.S. Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the U.S. Code, at our website, http://www.mspb.gov/appeals/uscode.htm. Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:              _____
                           William D. Spencer
                           Clerk of the Board

Washington, D.C.